# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Summit National, Inc., | ) | 05 B 15565 |
| | ) | |
| | ) | |
| Debtor. | ) | Hon. Jacqueline P. Cox |
| | ) | |

## MEMORANDUM OPINION

DaimlerChrysler Services North America, LLC ("Daimler") brings the instant motion to dismiss the Chapter 11 bankruptcy case filed by Summit National, Inc. ("Summit"). 11 U.S.C. § 1112(b) provides as follows:

> (b) Except as provided in subsection (c) of this section, on request of a party in interest or the United States trustee or bankruptcy administrator, and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title or may dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, for cause, including--
> (1) continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation;
> (2) inability to effectuate a plan;
> (3) unreasonable delay by the debtor that is prejudicial to creditors;
> (4) failure to propose a plan under section 1121 of this title within any time fixed by the court;
> (5) denial of confirmation of every proposed plan and denial of a request made for additional time for filing another plan or a modification of a plan;
> (6) revocation of an order of confirmation under section 1144 of this title, and denial of confirmation of another plan or a modified plan under section 1129 of this title;
> (7) inability to effectuate substantial consummation of a confirmed plan;
> (8) material default by the debtor with respect to a confirmed plan;
> (9) termination of a plan by reason of the occurrence of a condition specified in the plan; or
> (10) nonpayment of any fees or charges required under chapter 123 of title 28.

11 U.S.C. § 1112(b). Daimler has pressed one of the nonenumerated grounds for dismissal "for

1

cause" that has developed through judicial construction: lack of good faith in filing a Chapter 11 petition.

The approach taken by Daimler in this case and by bankruptcy courts in many other published opinions has been to apply a list of factors to determine whether a Chapter 11 filing was undertaken in bad or good faith and, consequently, whether "cause" for dismissal exists under 11 U.S.C. § 1112(b).

> (1) the debtor has one asset;
> (2) the pre-petition conduct of the debtor has been improper;
> (3) there are only a few unsecured creditors;
> (4) the debtor's property has been posted for foreclosure, and the debtor has been unsuccessful in defending against the foreclosure in state court;
> (5) the debtor and one creditor have proceeded to a standstill in state court litigation, and the debtor has lost or has been required to post a bond which it cannot afford;
> (6) the filing of the petition effectively allows the debtor to evade court orders;
> (7) the debtor has no ongoing business or employees; and
> (8) the lack of possibility of reorganization.

*In re Laguna Associates Ltd. Partnership*, 30 F.3d 734, 738 (6th Cir. 1994); *see also In re Little Creek Dev. Co.*, 779 F.2d 1068, 1072-73 (5th Cir.1986); *In re St. Paul Self Storage Ltd. Partnership*, 185 B.R. 580, 582-83 (B.A.P. 9th Cir. 1995). The application of this list of factors is entirely "non-prescriptive," *In re N.R. Guaranteed Retirement*, 112 B.R. 263, 272 (Bankr. N.D. Ill. 1990), so the Court must consider the "totality of the circumstances." Because the parties have taken this approach in this case and because of its widespread use, the Court will utilize this approach here. However, the unpredictability of this approach in addition to its sometimes tenuous connection to the general principles of bankruptcy law and to specific Bankruptcy Code provisions has garnered cause for concern, *N.R. Guaranteed Retirement*, 112 B.R. at 271-72, and another approach is to apply a few key overarching bankruptcy-law principles to the debtor's circumstances and particular

creditor body, *see id.* at 272-77; *In re Integrated Telecom Express*, 384 F.3d 108, 119-21, 128-29 (3rd Cir. 2004). The *N.R. Guaranteed Retirement* developed more definite, objective, and coherent standards for determining whether a Chapter 11 case has been filed in good faith, or, more accurately, whether an unenumerated "cause" for dismissal has been established. *See also In re Original IFPC Shareholders*, 317 B.R. 738, 749-50 (Bankr. N.D. Ill. 2004) ("Some courts have noted that focusing on terms such as good or bad faith in filing is misleading to some degree, [citation], as the question is really whether the debtor has presented a legitimate reorganizational objective within the scope of the Bankruptcy Code or rather has presented 'tactical reasons unrelated to reorganization.'") (quoting *In re Marsch*, 36 F.3d 825, 828 (9th Cir.1994)). The purpose of formulating these standards was to "develop more consistent and predictable tests of 'cause' for dismissal" and thereby avoid, to some extent, the "'purely subjective broadside attacks upon debtors'" that had been reason for criticism. *N.R. Guaranteed Retirement*, 112 B.R. at 272 (quoting *In re Gulph Woods Corp.*, 84 B.R. 961, 971 (Bankr. E.D. Pa. 1988)).

The application of these factors to determine whether a filing was in good faith should furthermore be tempered and focused by a couple of inquiries that are very basic to all Chapter 11 cases. Is the debtor a financially distressed (but not necessarily insolvent) company, and Chapter 11 relief will either preserve going-concern value, or, if the debtor is "out of business," will it otherwise maximize the value of property for the collective benefit of creditors? *Integrated Telecom Express*, 384 F.3d at 119-21, 128-29 (3rd Cir. 2004). Or, has the petition been "filed merely to obtain a tactical litigation advantage." *Id.* at 120. If Chapter 11 can relieve financial distress in such a way that it maximizes value for all creditors – either in a plan of reorganization, a plan of liquidation, or a § 363 sale of all assets, *see id.* at 273 n.7; 11 U.S.C. § § 363(b)(1), 1123(b)(4) – then it is not "merely" a

litigation tactic (though it might also be one). Stated differently, one formulation of this rule is that a "'Chapter 11 proceeding should be dismissed [due to its impact on non-bankruptcy rights] only if the debtor has the clear ability to survive without bankruptcy court protection.'" *N.R. Guaranteed Retirement*, 112 B.R. at 273 (quoting *In re Holm*, 75 B.R. 86, 87 (Bankr. N.D. Cal. 1987)) (alteration in 112 B.R. 263). If the debtor cannot satisfy a judgment or other debt using "non-business assets" and furthermore faces severe disruption, a Chapter 11 case and the accompanying automatic stay are considered good-faith methods of halting one creditor for the entire creditor body's benefit. *Id.* at 272-73, 276-77.

### Application of § 1112(b) Standards to This Chapter 11 Filing

This Court has had previous occasions to determine whether Chapter 7 and 11 filings were made in bad faith. *In re Liptak*, 304 B.R. 820, 827 (Bankr. N.D. Ill. 2004) (individual Chapter 11); *In re Original IFPC Shareholders*, 317 B.R. 738 (Bankr. N.D. Ill. 2004) (corporate Chapter 11); *American Telecom Corporation*, 304 B.R. 867 (Bankr. N.D. Ill. 2004) (Cox, J.) (dismissing corporate Chapter 7 case because debtor had no other significant assets to liquidate apart from the debtor's antitrust counterclaim previously adjudged in favor of the primary creditor/counterdefendant and pending on appeal). The case at bar does not involve an attempt to relitigate previously adjudicated domestic-relations matters as in *Liptak*. It does not involve the stalling of the veil-piercing process against nondebtor corporate alter egos as in *American Telecom Corporation*. It does not present the more definite risk to the future creditor body and the futility for the present one that *Original IFPC Shareholders* presented, at least not at this point in time. *American Telecom Corporation* and *Original IFPC Shareholders* were also unique in that the bankruptcy cases were more clearly shells holding nothing other than a piece of nonbankruptcy litigation. (The dividend

to unsecured creditors from the bank account in *Original IFPC Shareholders* would have been less than 1%).

Here, the debtor has assets consisting of a cause of action against Daimler and various assets, all of disputed value and utility, that relate to the debtor's software operation: ownership of or contractual interests in five kinds of accounting software, approximately 200 licenses related thereto, at least four executory contracts for future servicing of such software, $230,000 in disputed accounts receivable, and $5000's worth of computer hardware. The lowest value that Summit places on the Daimler litigation is $6.5 million. Daimler was willing to pay the secured creditor with a lien on the same lawsuit, Fox, $1 million to avoid further litigation. Thus, the debtor has an asset that is of potential value to the bankruptcy estate, and the debtor is attempting to realize that value *for the first time* and has already achieved a partial victory on the breach-of-license issue and has defeated Daimler's motions for summary judgment in favor of Daimler. All of these assets, even the heavily disputed ones relating directly to Summit's software operation, are highly significant for two reasons. First, the debt load in this case could conceivably be quite manageable given the number of disputed assets and the estimated value of only a handful of them. Eleven non-insider creditors hold unsecured claims for approximately $328,000; Fox has a lien on all assets to secure a debt that is now just over $1 million. If Summit can eke out approximately $1.4 million plus enough to cover the professional fees for this Chapter 11 and the Daimler litigation, all claimants will be paid in full, or unsecured creditors could receive a significant dividend.[1] The creditors of this estate, including Fox, could, as a whole, be in a better position if the litigation of the debtor's claim proceeds to a final

---

[1] Of course, if Summit is to reorganize and exist after confirmation of a Chapter 11 plan, all creditors must eventually have a right to be paid in full with interest if the current shareholders want to retain their shares of stock, *see* 11 U.S.C. § 1129(b)(2)(B).

judgment after the Sixth Circuit ruling on the appeal from the grant of summary judgment against Daimler. The picture in this case is much less bleak than in this Court's previous rulings in *Liptak*, *American Telecom Corporation*, and *Original IFPC Shareholders*[2] – all cases in which the debtors' claims against others were purportedly worth a great deal but had nevertheless already suffered defeat in trial. For the fact-specific reasons stated in each of those rulings, each of the creditor bodies would likely have been in no better a position had the bankruptcy case proceeded. On the other hand, if this Court were to surrender its bankruptcy jurisdiction by granting the motion to dismiss the Chapter 11 case, Fox was about to sell all of Summit's assets for as little as $200,000 – a result that is antithetical to the Code's purpose of maximizing value for the benefit of all creditors. In that scenario, creditors as a whole will be worse off than if this Chapter 11 case had proceeded. Alternatively, if Summit recovers no damages on its claim against Daimler, the unsecured creditors will be in roughly the same position of no recovery.[3] Obviously Fox would prefer a deal in which she alone would recover a lesser amount in the near future as a result of Daimler's bid at a UCC sale. Nevertheless, the Court's job under bankruptcy law is to consider the creditor body as a whole. It could be that in the alternative scenario just described, Fox has a consensual lien on an asset that turns out to have no value. Because of the Court's duty to the interests of all creditors, Fox's immediate interest in a deal with Daimler does not trump the federal

---

[2] *IFPC* is distinguishable in at least three respects. First, the debtor had lost twice in attempting to prosecute the cause of action that was its primary asset; here the debtor has not lost and has actually prevailed on a crucial issue of breach. Second, a UCC sale of the cause of action was not imminent in *IFPC*, while a UCC sale in this case would have doomed any prospect of recovery for unsecured creditors. Third, the Chapter 11 plan in *IFPC* would have required borrowing at least $1,750,000 from new and existing outside investors to fund further risky litigation, while the special litigation attorneys in this case are prosecuting the debtor's suit against Daimler on a contingency-fee basis.

[3] The outcome of the relevant nonbankruptcy litigation, the Bankruptcy Code, and this Court will ultimately decide what distribution unsecured creditors will receive, not the debtor's expectation delineated in the petition.

interest in collective, organized bankruptcy administration of financially troubled companies. Plus, if the collateral in reality has no true value, it is not this Court's duty to inflate it for the benefit of one creditor. If Summit's claim produces a recovery of damages, Fox stands first in line for payment as the only secured creditor of the estate and receives the various other protections that the Bankruptcy Code affords to all secured creditors.

All of these assets, even the heavily disputed ones, are highly significant for another reason. Daimler seriously challenged Summit's future ability to re-enter the software industry for car leasing and its concomitant ability to generate the cash flow that would be necessary to successfully reorganize under Chapter 11. Summit's president Ken Duffy Sr. himself could not state when Summit would come out of "hibernation." Holding a Chapter 11 case (and the debtor-in-possession's exclusivity period for proposing a plan) open indefinitely for changes in the economic climate is dubious at best. Still, even if Summit is seen as having no ongoing business with consistent cash flow and no significant ability to sustain a reorganization effort, it could sell whatever assets are marketable, collect the valid claims and accounts receivables it holds, and distribute the proceeds in accordance with § 1129. *See* 11 U.S.C. §§ 363(b)(1), 1123(b)(4); *Integrated Telecom Express*, 384 F.3d at 273 n.7. Again, the important consideration is the maximization of value for all creditors, not necessarily whether Summit has crossed some threshold level of volume in selling new software licenses and servicing old ones.

Additionally, under the totality-of-the-circumstances test this bankruptcy case presents more than just a two-party dispute and more than a handful of unsecured creditors with nominal claims. It is at least a three-party dispute (Summit, Fox, and Daimler) involving two entirely distinct causes of action, and the eleven unsecured creditors have a stake in the outcome of this bankruptcy and

could choose to raise additional issues. Moreover, the fact that Summit is a "financially distressed" company which is in "need" of bankruptcy relief in the sense that it cannot pay its debts using nonbusiness, liquid assets was never seriously disputed. *See supra.*

At this point in time not only would it be premature to conclude that this Chapter 11 case can provide no benefit to creditors but it would also be inappropriate to short circuit the Sixth Circuit's ruling on the liability finding in favor of Summit as well as any subsequent trial-court litigation required to produce a final judgment. Such interference will occur if either of two situations occurs: 1) if the federal courts in the Sixth Circuit misconstrue the automatic stay of § 362(a) as applying to claims prosecuted by (rather than against) the debtor or 2) if Fox's UCC sale proceeds to the point at which Daimler owns the claim against itself for a price that is less than the amount of money Summit would have received to pay its creditors had it been permitted to proceed to final judgment on it claim. As for the bad-faith-filing factor that disapproves using a bankruptcy case as a litigation tactic, Daimler makes the conclusory assertion that the concept applies here but then turns the concept on its head. Summit filed this Chapter 11 case but then requested that the nonbankruptcy litigation proceed as it would have had no case been filed: it has requested that the copyright infringement and breach-of-license litigation proceed immediately in the original forums, the Sixth Circuit Court of Appeals and the U.S. District Court for the Eastern District of Michigan, where it was pending. This is a far cry from the forum shopping apparent in *Liptak* and *American Telecom Corporation.* Rather, it is Daimler who seeks to avoid and/or alter the pending nonbankruptcy litigation by avoiding a ruling by the Sixth Circuit Court of Appeals while this bankruptcy case exists, causing the dismissal of this Chapter 11 case, bidding at the secured creditor's UCC sale, purchasing the claim against itself, and then dismissing the related lawsuit. Daimler's suggestion

to the Sixth Circuit Court of Appeals that the automatic stay of § 362(a) applied to the portion of the appeal pertaining to Summit's motion for summary judgment on its claim against Daimler was erroneous. To determine the application of § 362(a)(1),[4] one must disaggregate all of the claims, counterclaims, cross-claims, and third-party claims that are part of the lawsuit. *See Parker v. Bain*, 68 F.3d 1131, 1137-38 (9th Cir. 1995). One must then determine with respect to each component whether, at its inception, the claim was "against the debtor"; the Court must not look at who was most recently prevailing at any subsequent point, including all levels of appeal. *See id.*; *Teachers Ins. and Annuity Ass'n of America v. Butler*, 803 F.2d 61, 65 (2nd Cir. 1986); *Farley v. Henson*, 2 F.3d 273, 275 (8th Cir. 1993); *Cathey v. Johns-Manville Sales Corp.*, 711 F.2d 60, 61-62 (6th Cir. 1983). To the extent that the claim was not "against" the debtor at its inception, its further prosecution is not stayed pursuant to § 362(a)(1). *Aiello v. Providian Financial Corp.*, 239 F.3d 876, 880 (7th Cir. 2001); *In re Hall*, 304 F.3d 743, 746 (7th Cir. 2002); *Martin-Trigona v. Champion Federal Sav. and Loan Ass'n*, 892 F.2d 575, 577-78 (7th Cir. 1989); *Carley Capital Group v. Fireman's Fund Ins. Co.*, 889 F.2d 1126, 1127 (D.C. Cir. 1989). Thus, the debtor's claim against Daimler for breach of license and copyright infringement has never been subject to the automatic stay, and stay modification under § 362(d) is unnecessary.

The Court will therefore permit this bankruptcy case to proceed by denying the motion to

---

[4]

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of--
(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

11 U.S.C. § 362(a)(1).

9

dismiss the Chapter 11 case of Summit and by declaring that the automatic stay does not apply to causes of action prosecuted by Summit. Because of the inequity that would result from allowing Summit to prosecute its claim while prohibiting Daimler from prosecuting its related counterclaim for extortion, the Court finds "cause" for stay modification under § 362(d)(1) to the extent that defendant Daimler has a counterclaim *against the debtor* that requires liquidation and is potentially subject to setoff. *See generally* 11 U.S.C. §§ 553(a), 506(a), 362(a)(1) & (7). However, if the stay continues to exist at the conclusion of the nonbankruptcy litigation because the bankruptcy case has not been dismissed or closed and discharge has not occured, *see* § 362(c), and such setoff leaves Daimler with a net claim against Summit's bankruptcy estate, Daimler may not proceed with collection activity against the debtor but must instead submit to the claim-allowance and distribution procedure like all other creditors in bankruptcy cases. 11 U.S.C. §§ 501, 502, 726, 1129. That is, the automatic stay continues to apply to collection on Daimler's counterclaim.

To be sure, this case does share some of the characteristics of other bad-faith filings: the timing of the petition in relation to a foreclosure sale and the lack of ongoing business activity requiring employees and producing a cash flow. These characteristics are evaluated under a totality-of-the-circumstances test, and the touchstone must always be whether the creditor body as a whole could conceivably benefit from a collective proceeding, especially early in the Chapter 11 case. The fact that Summit filed the Chapter 11 on the eve of Fox's UCC sale does traditionally weigh in favor of a bad-faith finding, as noted above. Nevertheless, because bankruptcy filings and foreclosure sales are both related to financial distress, bankruptcy cases frequently occur on the eve of a foreclosure sale (especially in Chapter 13 cases). The question for the Court and the trustee (or the Chapter 11 debtor-in-possession) is how staving off the foreclosure sale can benefit creditors and

shareholders as a whole. Here, it is apparent that one creditor, Fox, may be acting to the detriment of the unsecured creditors, and such a scenario is the classic problem that the bankruptcy laws were designed to remedy. If, at a later point in this case, creditors are no longer benefitting from either the federal litigation against Daimler or from the Chapter 11 forum, parties in interest may proceed by bringing another motion to dismiss the bankruptcy case or to convert it to a Chapter 7 case under § 1112 of the Code. As previously noted, a liquidating Chapter 11 may also appear more appropriate than reorganization in this case. Right now, Summit's Chapter 11 case shall proceed along with the appeal pending in the Sixth Circuit Court of Appeals and the related trial court litigation in U.S. District Court for the Eastern District of Michigan. Summit may propose a Chapter 11 plan, and once the exclusivity period runs, the creditors may propose one as well.

The only factor yet to be addressed, and the one receiving the most attention at the evidentiary hearing, is whether Summit's principal's prepetition conduct was "improper." *In re Laguna Associates Ltd. Partnership*, 30 F.3d 734, 738 (6th Cir. 1994); *see also In re Little Creek Dev. Co.*, 779 F.2d 1068, 1072-73 (5th Cir.1986). Daimler specifically focused on a variety of alleged misrepresentations of Ken Duffy, Sr., prior to the Chapter 11 filing. This factor is one that could be subject to criticism, depending on how it affects the good-faith analysis, because the Code indicates that creditors are not to suffer any more than they already have due to misconduct or misrepresentations of a debtor corporation's principals. If value can be maximized in favor of creditors, it is not at all clear that a Chapter 11 case should not proceed in spite of past transgressions, and any misrepresentations that did occur are to be handled under other provisions of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure, depending on when and in what context misrepresentations or misconduct occurred. The filing of a court paper such as the

11

bankruptcy petition itself is subject to the certification requirements of Bankruptcy Rule 9011(b). Also, the Court, on motion of a party in interest and after notice and hearing, has the power to appoint a Chapter 11 trustee to replace a debtor-in-possession "for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor." 11 U.S.C. § 1104(a)(1). Similarly, the same provision that Daimler is attempting to use for the instant motion to dismiss, § 1112(b), empowers the Court to involuntarily convert a Chapter 11 case to a Chapter 7 case if in the best interest of creditors, and such conversion would also involve replacing the debtor-in-possession with a case trustee. The law does not contemplate dismissal of a Chapter 11 case as a simple way to punish a debtor-in-possession's principals for alleged past misdeeds, at least not where other competing interests exist.

The conclusion to the following passage in *In re N.R. Guaranteed Retirement*, 112 B.R. 263, 270-71 (Bankr. N.D. Ill. 1990), is particularly apt in this case:

> There are, in fact, scores of Chapter 11 cases in which relief from stay has been granted or dismissal ordered because the case was filed in bad faith. [citations] The Seventh Circuit noted this line of cases with approval in *In re Madison Hotel Associates*, 749 F.2d 410, 426 (1984)..., and the Seventh Circuit has itself enforced a good faith filing requirement, under identical statutory provisions, in the context of Chapter 13. [citations] District and bankruptcy court decisions from the Northern District of Illinois have repeatedly used a lack of good faith in filing as a basis for granting relief. [citations]
>
> Teaching of such substantial weight must, of course, be honored, but the teaching is hard to apply. Some courts, in probing the good faith of a filing, have attempted to ascertain the mental state of the individuals who filed. *See, e.g., In re Thirtieth Place, Inc.*, 30 B.R. 503, 505 (9th Cir.BAP 1983) (reviewing the conduct of the debtor's principals, both before and after the case was filed, to determine whether they had "an intent to cause hardship or to delay creditors ... without an intent or ability to

reorganize," i.e., "an improper state of mind"). Other courts have suggested that objective factors, rather than the motivation of the debtor or its principals, should be the primary focus in determining the good faith of a filing.

> Section 1112(b) and its associated "good faith" doctrine are primarily concerned with the underlying question whether reorganization is the proper course of action in a particular debtor's case. On that score dismissal of a Chapter 11 petition--like dismissal of any lawsuit--is not imposed principally as a sanction of bad intentions or obstreperous behavior. Instead, dismissal flows from the legal determination the debtor is not entitled to the remedy it seeks.
> *Mandalay Shores*, 63 B.R. at 848.

*N.R. Guaranteed Retirement*, 112 B.R. at 270-71 (citations omitted). In a related passage later in the opinion, Judge Wedoff explained further:

> Misstatements by the debtor can also produce unreasonable delay in proceedings. . . . In the context of Chapter 11, at least one bankruptcy court has indicated that misstatements in schedules may be considered as factors bearing on good faith. *In re Davis*, 93 B.R. 501, 503 (Bankr.S.D.Tex.1987). Apart from causing delay, however, the mere fact that misstatements were made (as opposed to the impact of the actual facts) would not appear to bear on cause for dismissal or relief from stay. Rather, the appropriate remedies for misstatements by debtors in Chapter 11 would appear to be appointment of a trustee or examiner (authorized under Section 1104 of the Code for, among other things, "fraud" and "dishonesty" in the conduct of the debtor's affairs) or sanctions under Bankruptcy Rule 9011.

*N.R. Guaranteed Retirement*, 112 B.R. at 277.

Daimler did not tie the misrepresentations to the filing of this Chapter 11 case in any way that would demonstrate that bankruptcy relief is presently inappropriate under the present facts and circumstances, and many of the alleged misrepresentations were either not related to demonstrably false representations in the bankruptcy petition or will have no effect on the bankruptcy estates future ability to realize and recover value for the benefit of creditors.

## CONCLUSION

For the foregoing reasons, DaimlerChrysler's motion to dismiss the Chapter 11

bankruptcy case of Summit National, Inc. pursuant to 11 U.S.C. § 1112(b) is denied. The automatic stay of 11 U.S.C. § 362(a) has never applied to the cause of action prosecuted by Summit National, Inc. against DaimlerChrysler Services North America, LLC, captioned as case number 02-71871 in the U.S. District Court for Eastern District of Michigan and as case number 03-1796 in the Sixth Circuit Court of Appeals. The Court finds cause for stay modification under § 362(d)(1) to the extent that Daimler has a counterclaim against Summit that requires liquidation and potential setoff; Daimler may not proceed with collection activity against Summit but must submit to the claim-allowance and distribution procedure in the bankruptcy case.

Date:   July 19, 2005                    ENTERED:

_____J.P.Cox_____
Jacqueline P. Cox
United States Bankruptcy Judge